IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| | : |
| | :  No. 23-cr-114-2-ACR |
| v. | : |
| | : |
| RONALD MICHAEL BALHORN, | : |
| | : |
| *Defendant.* | : |

**DEFENDANT'S MOTION FOR RELEASE PENDING APPEAL**

Pursuant to 18 U.S.C. §§ 3141(b) and 3143(b) and Federal Rules of Criminal Procedure 38(b)(1) and 46(c), Defendant Ronald Michael Balhorn respectfully moves this Court for release pending appeal. Mr. Balhorn satisfies the criteria for release pending appeal because he poses no flight or safety risk, his appeal is not for the purpose of delay, and his appeal will raise substantial questions of law and fact that — if decided in his favor — would result in the reduction of his sentence to a term of imprisonment less than the total time he will serve during the appeal process.

**INTRODUCTION**

On January 6, 2021, Ronald Michael Balhorn walked into the United States Capitol through an open door. While inside, he did not break, damage, or steal any property; hurt or injure law enforcement (or anyone else); or enter any private office space or proceed to the well of the House or the Senate. Mr. Balhorn was not involved in the planning of any of the activities that the crowd was engaged in on January 6, 2021, nor was he associated with any of the groups reported to be responsible for aspects of what occurred that day. Nobody, especially Mr. Balhorn, is disputing that January 6 was an extremely dark day in our nation's history. The question is not whether Mr. Balhorn broke the law through his presence inside the U.S. Capitol on January 6. Rather, the

question is whether Mr. Balhorn's sentence of over three months in a federal correctional institution is reasonable, when nearly three hundred other defendants who breached the U.S. Capitol received sentences of probation and many others received *very* short periods of incarceration, and when Mr. Balhorn had no criminal record and lived an otherwise lawful life for over fifty years, proceeded to trial only because the Government insisted he plead guilty to the sole felony offense — of which this Court ultimately acquitted him — and does not pose a danger to the community. Moreover, the U.S. Sentencing Commission believes that individuals like Mr. Balhorn, who have no prior criminal history, pose an extremely low risk of reoffending.

Similar to Mr. Balhorn exercising his constitutional right to a trial in this case, he has now exercised his right to appeal the conviction and sentence arising from that trial. He seeks release on appeal because, if not granted, he will serve the entirety of his sentence of incarceration before his appeal is even fully briefed, let alone argued or decided. Consistent with his history and characteristics and this Court's prior findings allowing him to remain in the community at all stages of the case, including post-sentencing, Mr. Balhorn is neither a danger to the community nor a risk of flight. He intends to raise on appeal a substantial question in that it is a close call, and the effect of denying bond would be to render the relief he seeks (a reduced sentence) moot, and to require him to give up his business that he has run on a daily basis for the last three decades, impacting not only his own livelihood, but also that of the employees who rely on him.

As discussed herein, we judge an individual by his actions alone and do not attribute conduct to him that *others* undertook, but he did not. If an officer is assaulted, a vehicle torched, a church burnt, a Molotov cocktail thrown, or a building damaged, we hold the specific individuals at fault responsible, and do not sentence everyone else who was present at that location at that moment for the conduct of the responsible individuals. While the Government initially

acknowledged this in a prior sentencing memorandum (*see United States v. Thomas Vinson*, No. 21-cr-355-02 (RBW) (D.E. 44 at 19) (noting that "each defendant should be sentenced on their individual conduct")), it has become an unfortunate occurrence in January 6 prosecutions for individuals to be sentenced for what others did at the U.S. Capitol, in the absence of any violent or destructive conduct committed by that specific defendant. Fortunately, our system of justice does not operate in this manner. The federal statute governing sentencing, 18 U.S.C. § 3553, focuses on the history and characteristics of an *individual,* not on that individual's association with a *group*, and a review of the statutory factors in this case raises a substantial question as to the reasonableness of Mr. Balhorn's sentence.

## PROCEDURAL HISTORY

On March 16, 2023, Mr. Balhorn was charged by Indictment with five offenses (including the felony offense of civil disorder) relating to his participation in the events of January 6, 2021 at the U.S. Capitol. Although he was present at the Capitol, a fact which was never disputed, Mr. Balhorn proceeded to trial because the Government refused to extend any plea offer less than a felony for Mr. Balhorn's first arrest in an otherwise law abiding fifty-four years of life. Mr. Balhorn exercised his right to a trial believing that he did not commit the felony offense of civil disorder as charged, which was supported by this Court's verdict acquitting him of that conduct after the Government failed to establish the offense with legally sufficient proof. Following a bench trial, Mr. Balhorn was found guilty of three misdemeanor offenses covering substantially identical conduct: entering and remaining in a restricted building or grounds, in violation of 18 U.S.C. § 1752(a)(1); disorderly and disruptive conduct in a restricted building or grounds, in violation of 18 U.S.C. § 1752(a)(2); and parading, demonstrating, or picketing in the Capitol building, in violation 40 U.S.C. § 5104(e)(2)(G). At sentencing, this Court sentenced Mr. Balhorn to over three

months of incarceration in a federal correctional institution to be determined by the Federal Bureau of Prisons ("BOP"). On March 5, 2024, Mr. Balhorn noticed a timely appeal of his conviction and sentence. He now awaits designation to a BOP facility while his appeal is pending.

## FACTUAL BACKGROUND

Ronald Balhorn is fifty-four years of age and a lifelong resident of Michigan. He has no prior contacts with the criminal justice system and, by all accounts, has lived an upstanding life. He has maintained employment throughout his life, spending the last thirty years building from the ground up a small interior demolition business based around the insurance restoration industry. As a small business owner, Mr. Balhorn is required to be on site for all work performed by his company and its employees. He fields all calls from contractors and builders and personally handles the scheduling and stocking of material in his trailer, which is deployed to each job site. He sets up all containments before work begins and ensures that each employee follows all Occupational Safety and Health Administration ("OSHA") requirements at the respective job sites. He is responsible for estimating, supervising, and keeping track of all hours worked by employees. To be clear, Mr. Balhorn is integral to the performance and viability of his business. When Mr. Balhorn is incarcerated for over three months in a federal facility, his business will likely close, and four to five employees, two of whom have worked for Mr. Balhorn's company for over fourteen years, will lose their employment. As Mr. Balhorn's incarceration will be completed before his appeal is fully briefed, let alone scheduled for oral argument, he requests that he be permitted to remain on bond during the pendency of his appeal.

## ARGUMENT

A court "shall order the release" of an individual pending appeal if it finds:

(A) by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released . . . ; and

  (B) that the appeal is not for the purpose of delay and raises a substantial question of law or fact likely to result in –

    (i) reversal,
    (ii) an order for a new trial,
    (iii) a sentence that does not include a term of imprisonment, or
    (iv) a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process.

18 U.S.C. § 3143(b)(1); *see also United States v. Perholtz*, 836 F.2d 554, 555 (D.C. Cir. 1987).

After determining that a defendant is neither a flight risk nor a danger to the community, courts use a two-step inquiry to determine whether to release that defendant pending appeal under § 3143(b)(1): "(1) Does the appeal raise a substantial question? (2) If so, would the resolution of that question in the defendant's favor be likely to lead to [one of the options enumerated in § 3143(b)(1)(B)(i)–(iv)]?" *Perholtz*, 836 F.2d at 555. "[A] substantial question is a close question or one that very well could be decided the other way." *Id.* (citations and punctuation omitted).

Mr. Balhorn meets all the statutory criteria for release pending appeal.

**I.** **Mr. Balhorn Poses No Flight or Safety Risk.**

There is no dispute that Mr. Balhorn poses no risk of flight or risk to the safety of the community. The convictions in this case represent Mr. Balhorn's first and only convictions at the age of fifty-four. He not only has no prior criminal history; he has no history of violence. He was permitted to remain in the community pending trial and following this Court's verdict, and was permitted to self-surrender at a BOP facility, following the imposition of sentence.

**II.** **Mr. Balhorn's Appeal Raises a Substantial Question of Law and Fact That if Resolved in His Favor Could Result in a Sentence Less Than the Sentence He Will Serve Pending Adjudication of His Appeal.**

As discussed below, Mr. Balhorn's appeal is not for the purpose of delay, and a substantial question of law and fact exists, which justifies his release pending adjudication of his appeal. As

Mr. Balhorn will complete his sentence of 100 days of incarceration before his appeal is fully adjudicated, it is wholly appropriate that this Court grant him release pending appeal, especially, given that he presents neither a risk of flight nor a danger to the community.

In *United States v. Gall*, the Supreme Court held that post-*Booker*, appellate review of sentencing decisions is limited to determining whether sentences are reasonable. 552 U.S. 38, 46 (2007) (citing *United States v. Booker*, 543 U.S. 220 (2005)). The Court outlined a two-step process by which appellate courts must conduct the reasonableness review of sentences. *First*, the district court must ensure that a sentence is procedurally reasonable, including an adequate review of the Guidelines and applicable departure. *Gall*, 552 U.S. at 51. *Second*, the district court must consider the substantive reasonableness of the sentence, looking to the totality of the circumstances and the extent of the deviation from the Guidelines, while giving "due deference" to the district court's weighing of the § 3553(a) factors. *Id.* In other words, *Gall* "required a deferential—but real—inquiry into the substance of sentences." Note, *More Than A Formality: The Case for Meaningful Substantive Reasonableness Review*, 127 Harv. L. Rev. 951, 957 (2014). The Guidelines, however, are "not the only consideration"— or even the most-important consideration. *Gall*, 552 U.S. at 49. A sentencing court must "consider all of the § 3553(a) factors" and determine whether those factors "support the sentence requested by a party." *Id.* at 49-50. In evaluating the § 3553(a) sentencing factors, a district court "may not presume that the [g]uidelines range is reasonable," but "must make an individualized assessment based on the facts presented." *Id.* at 50. "After settling on the appropriate sentence," the court must "adequately explain the chosen sentence" to, among other things, "allow for meaningful appellate review." *Id.*

A sentencing is a fact specific assessment of a variety of factors mandated by Congress for which there is no limitation on what information a district court can consider (*see* 18 U.S.C § 3661)

in ultimately fashioning a sentence that meets the requirement of being "sufficient, but not greater than necessary," to comply with the purposes of sentencing. 18 U.S.C. § 3553(a). So long as Mr. Balhorn's sentence was sufficient as to him, it is appropriate for purposes of 18 U.S.C. § 3553(a) and takes its appropriate place in the grand scheme of the criminal justice system.

"It has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." *Koon v. United States*, 518 U.S. 81, 113 (1996). Underlying this tradition is the principle that "the punishment should fit the offender and not merely the crime." *Williams v. New York*, 337 U.S. 241, 247 (1949). Additionally, a "court's duty is always to sentence the defendant as he stands before the court on the day of sentencing." *Pepper v. United States*, 562 U.S. 476, 492 (2011) (citation and punctuation omitted).

Mr. Balhorn's sentence of 100 days of incarceration for his first ever conviction — for misdemeanor conduct that did not directly cause harm to any individuals or property — is substantially unreasonable. At sentencing, this Court focused significantly on Mr. Balhorn's participation and association with individuals who collectively engaged in violence, *i.e.*, assaulted and beat officers, defaced property, and stole property, none of which Mr. Balhorn undertook himself. *See* Feb. 21, 2024 Tr. at 35:12-14 ("This was part of an insurrection. This was part of an attack on our democratic government."); *id.* at 37:21-24 ("They were overrunning the United States Capitol, what on earth would you be doing other than being part of an insurrection if you're overrunning the U.S. Capitol with thousands and thousands of other people."); *id.* at 38:5-7 ("And I think any intelligent human being would adduce in about three seconds of looking at video were part of an insurrection."). The Court emphasized its view that those present on January 6 shared a

collective mindset:

> It's not like I just dreamed it up. It's not like I'm a novelist and I like came up with a scene and this is how I painted the picture. It is what happened. It's not just my view of what happened. It's not what a bunch of woke people are saying happened. It's not what MSNBC is saying is happening. It is what happened.
>
> \*     \*     \*
>
> It's not even credible that unintelligent human beings would be up against police in riot gear repeatedly, trying to keep people from entering the U.S. Capitol, and that they kept going and they thought that was not part of an insurrection. It's just not credible.

*Id.* at 39:20-40:1; 40:10-14. *Accord id.* at 42:14-15 ("They're being punished for being part of an insurrection.").

Crucial to sentencing is a defendant's individual history and characteristics. In this case, that includes the absence of any prior criminal history, the living of an otherwise lawful life, and lifetime employment, not the political motivations of protestors Mr. Balhorn was present with on January 6, 2021 or their actions, particularly where there is no charge of conspiracy or aiding and abetting. As one district court has instructed,

> surely, if ever a man is to receive credit for the good he has done, and his immediate misconduct assessed in the context of his overall life hitherto, it should be at the moment of his sentencing, when his very future hangs in the balance. This elementary principle of weighing the good with the bad, which is common to all the great religions, moral philosophies, and systems of justice, was plainly part of what Congress had in mind when it directed courts to consider, as a necessary sentencing factor, 'the history and characteristics of the defendant.'

*United States v. Adelson*, 441 F. Supp. 2d 506, 513-14 (S.D.N.Y. 2006).

Since January 6, 2021, nearly three hundred defendants have received sentences of probation in this Court for misdemeanor offenses, yet Mr. Balhorn was sentenced to over three months of incarceration for his first ever misdemeanor offense. Does he present a risk to the safety of the community? No, he does not. Does he have a long history of arrests or convictions for

8

violence, or otherwise require extensive rehabilitation? Of course not. Is he at a risk of recidivism? Highly unlikely.

In various sentencing memoranda concerning January 6, 2021, the Government has recognized that not all actors are equal in terms of culpability and has systemically been setting forth factors for judges to consider in relation to January 6, 2021 sentences,[1] including: (i) whether, when, and how the defendant entered the Capitol building; (ii) whether the defendant engaged in any violence or incited violence; (iii) whether the defendant engaged in any acts of destruction; (iv) the defendant's reaction to acts of violence or destruction; (v) whether during or after the riot, the defendant destroyed evidence; (vi) the length of the defendant's time inside of the building, and exactly where the defendant traveled; (vii) the defendant's statements in person or on social media; (viii) whether the defendant cooperated with, or ignored, law enforcement; and (ix) whether the defendant otherwise exhibited evidence of remorse or contrition. Two additional factors should also be considered: (x) whether the defendant was involved with planning or coercing the events of January 6, 2021;[2] and (xi) whether the defendant timely offered to accept responsibility for his or her involvement and offered to enter a plea of guilty at a time that would have avoided the use of limited judicial, investigative, and prosecutorial resources.[3]

A review of these factors establishes that Mr. Balhorn is not unlike the vast majority of

---

[1] *See United States v. Reeder*, No. 21-cr-166, Gov't Sent. Mem. at 6-7 (D.E. 26).

[2] The Government has itself pointed to this as a relevant factor. *See, e.g.*, *United States v. Morgan*, No. 21-cr-164, Gov't Sent. Mem. at 6 (D.E. 22).

[3] *See, e.g.*, *United States v. Bustle*, No. 21-cr-238, Gov't Sent. Mem. at 6 (D.E. 38) ("The government also notes that from the outset, through his attorney, Joshua Bustle expressed a desire to plead guilty, acknowledge his conduct, and promptly resolve his case. When recommending an appropriate sentence, the government gives *significant* weight to the defendant's early resolution of this case." (emphasis added)).

other individuals who were protesting outside the U.S. Capitol, willfully entered the building, and, in actions and words, showed a general disregard for order and the safety of law enforcement at the Capitol and civilians inside, but who otherwise received limited, if no, incarceration for a misdemeanor disposition, especially, when they were first time offenders, as is Mr. Balhorn.

As for a willingness to accept responsibility, as stated in his sentencing memorandum, Mr. Balhorn would have accepted a misdemeanor plea offer if one had been offered to him.[4] The Government does not believe leniency is warranted for first time offenders or share concerns of over mass incarceration of first time offenders as it pertains to offenses relating to January 6. Instead, it believes that certain individuals, based on their conduct on a single day, should never be able to vote again and should never ever possess a firearm, as exemplified by the Government's insistence on proceeding on a felony offense of civil disorder when Mr. Balhorn would have acknowledged responsibility in this case, thereby saving extensive costs and precious law enforcement and prosecutorial resources during an ongoing crime epidemic in the Nation's Capital.

By exercising his right to a trial, Mr. Balhorn was properly acquitted of the civil disorder charge, after this Court found that the Government had not established guilt on the sole charged felony offense. Yet, for exercising this right, Mr. Balhorn was prohibited from obtaining acceptance of responsibility credit, thereby foreclosing his ability to further reduce his applicable sentencing guidelines, and was treated by the Government at sentencing as if he had been convicted of civil disorder, without regard to this Court's verdict. If the Government had offered Mr. Balhorn the standard misdemeanor plea offer of parading and demonstrating, he would have accepted that

---

[4] Note 2 to USSG § 3E1.1 notes that a defendant may exercise his right to trial and still be eligible for a reduction for acceptance of responsibility in certain limited situations.

plea, and he likely would have been sentenced to probation like the nearly three hundred other similarly situated defendants.[5]

While general and specific deterrence is a factor at sentencing, it is only one factor. The charges in this case received national and local press.[6] There is every indication that the public condemnation of Mr. Balhorn will continue for the foreseeable future. Unlike various other federal charges (besides other defendants in January 6 cases), no one would want to expose themselves to the level of vitriol that is being attributed to January 6 defendants — regardless of the level of their participation or the severity of the particular charges. The point of this observation is that the publicity involved in these cases itself provides significant general deterrence, unlike any run of the mill federal case. Regardless of the sentence this Court imposed, the headlines will remain. January 6, 2021 will be a day that lives in infamy, and, for those who were charged in connection with the events at the Capitol, it will be a lifelong blemish on their record.[7]

---

[5] Mr. Balhorn had every intention of acknowledging his regrets about his conduct on January 6, 2021, but his letter to the Court was inadvertently not incorporated into his sentencing memorandum and his decision not to address the Court orally at sentencing was based on his belief that his letter had been incorporated and his general apprehension about public speaking. But there should be no doubt that if Mr. Balhorn could do it all over again, he would never have approached the Capitol building on January 6, 2021. He takes responsibility for that terrible lapse in judgment.

[6] *See, e.g.*, https://www.fox2detroit.com/news/2-metro-detroit-men-arrested-for-roles-in-jan-6-capitol-riot, last visited April 1, 2024; https://www.cbsnews.com/detroit/news/2-metro-detroit-men-arrested-for-involvement-during-jan-6-capitol-attack/, last visited April 1, 2024; https://www.youtube.com/watch?v=fOu_iyk7_ms, last visited April 1, 2024; https://www.metrotimes.com/news/fbi-arrests-wayne-county-cousins-for-joining-violent-mob-during-jan-6-insurrection-32270686, last visited April 1, 2024, https://www.hometownlife.com/story/news/2023/02/08/redford-garden-city-men-facing-charges-for-jan-6-riot-involvement/69881961007/, last visited April 1, 2024.

[7] This includes the Government's maintenance of a separate webpage for each January 6 defendant where the defendant's court documents are available and free to download, separate and apart from press releases for the arrest, conviction, and sentencing of each defendant. *See, e.g.*, https://www.justice.gov/usao-dc/defendants/balhorn-ronald, last visited April 1, 2024;

11

While the Court is correct that "[t]he point of punishment isn't to help people" (*see* Feb. 21, 2024 Tr. at 38:23-24), just punishment is as equal a factor at sentencing as considering a defendant's history and characteristics or the need for rehabilitation. The goal underlying the governing federal statute is not to make punishment hurt a defendant, but to ensure that the district court's sentence is sufficient, but *not greater than necessary*, to comply with the purposes of sentencing. *See* 18 U.S.C. § 3553(a).

Clearly, Mr. Balhorn has already faced significant consequences for his actions and just deterrence has been imposed for his first conviction at the age of fifty-four. Furthermore, while the events of January 6, 2021 were unacceptable by any measure, and must be deterred from ever occurring again, it would be inappropriate to treat every participant in those events equally, without regard to the circumstances of their involvement.[8] The potential loss of Mr. Balhorn's business

---

https://www.justice.gov/usao-dc/pr/two-michigan-men-arrested-felony-charges-actions-during-jan-6-capitol-breach, last visited April 1, 2024.

[8] Regardless of the political ideology of those involved or the purpose of the protests, this country has recently seen very violent encounters with law enforcement that have often gone unpunished to the level in this case. *See*, *e.g.*, https://www.forbes.com/sites/anafaguy/2023/11/16/6-cops-and-90-protesters-injured-outside-dnc-in-clashes-over-israel-hamas-war-police-and-protest-group-say/?sh=6cfbb1265a4a, last visited April 1, 2024 (describing six Capitol Police officers assaulted and injured in response to pro-Hamas protests outside the Democratic National Committee headquarters while Congressional members were inside on November 16, 2023); https://www.jpost.com/international/article-771751, last visited April 1, 2024 (describing an assault outside the White House, which required White House staffers to relocate); https://www.kiro7.com/news/local/thousands-gather-capitol-hill-solidarity-with-demonstrations-portland/STVDEK5XUJHWLL2HQZT2NWDYVY/, last visited April 1, 2024 (identifying 55 officers injured after protests turned violent with trailers set on fire, windows at businesses smashed, cars damaged, and explosive devices thrown at police); U.S.S.S. Press Release, https://www.secretservice.gov/newsroom/releases/2020/05/secret-service-statement-pennsylvania-avenue-demonstrations-0, last visited April 1, 2024 ("More than 60 Secret Service Uniformed Division Officers and Special Agents sustained multiple injuries from projectiles such as bricks, rocks, bottles, fireworks and other items. Secret Service personnel were also directly physically assaulted as they were kicked, punched, and exposed to bodily fluids. A total of 11 injured employees were transported to a local hospital and treated for non-life threatening injuries."); https://www.nbcwashington.com/news/local/protesters-gather-in-dc-for-2nd-day-in-

and the loss of employment for his employees provides far more deterrence, general or specific, than is necessary to satisfy the purpose of sentencing.[9] The Government cavalierly brushes aside these real life concerns as irrelevant, as if Mr. Balhorn's business will just magically continue to run in his absence (Feb. 21, 2024 Tr. at 30:18-19: "It will be back when he gets out of prison"). Yet, no one in this country doubts that those who participated in the breach of the U.S. Capitol were prosecuted to the fullest extent of the law possible and arguably beyond (*see United States v. Fischer*, No. 23-5572, 2023 WL 8605748 (Dec. 13, 2023)), while the Government was no-papering two-thirds of all local street crime related arrests (to the extent made) during the relevant

---

response-to-george-floyds-death/2317512/, last visited April 1, 2024 (detailing eleven Metropolitan Police Department officers injured in one single evening as protests outside the White House grew violent); https://majorcitieschiefs.com/wp-content/uploads/2021/01/MCCA-Report-on-the-2020-Protest-and-Civil-Unrest.pdf, last visited April 1, 2024 (identifying at least 2000 injured officers nationwide based on data contributed from police associations — excluding Washington, DC, which withheld data — from May 25, 2020 through July 31, 2020 from protests).

[9] USSG § 5K2.0 provides for a departure due to a characteristic not adequately considered by the Sentencing Commission, where there is a sentencing factor "present to an exceptional degree or in some other way [that] makes the case different from the ordinary case where the factor is present." *Koon v. United States*, 518 U.S. 81, 96 (1996); *see also United States v. Decora*, 177 F.3d 676, 679 (8th Cir. 1999) (noting that, although the court relied on, for a downward departure, factors not ordinarily relevant — education, employment record, family, and community responsibility — these factors were present in an unusual degree not adequately taken into consideration by the Sentencing Commission). Even if not rising to the level of a departure, the effect on Mr. Balhorn's business can be evaluated as a basis to vary under the Sentencing Guidelines. As discussed above, Mr. Balhorn runs all aspects of his company, from internal management and operations, to relationships with business connections and vendors. It is Mr. Balhorn who keeps the business operating and who has multiple decades of industry knowledge. It is a real-world consequence that Mr. Balhorn's business may decline, if not fail, if he is incarcerated. This has the further, unintended consequences of increasing the risk that Mr. Balhorn's employees lose their jobs, and hindering Mr. Balhorn and his company from continuing to play the positive role that they do in the Garden City, Michigan community. If Mr. Balhorn had been permitted to serve his sentence in a halfway house or via home confinement, he would be able to work during the day and ensure his business survives the three-plus months of his incarceration.

period of the prosecution of this case.[10]

Below are the names of every January 6, 2021 Capitol breach defendant for whose conduct the Government did not even seek a sentence of incarceration:[11]

| | | |
|---|---|---|
| Morgan-Lloyd, Anna | Miller, Brandon | Daughtry, Michael |
| Ehrke, Valerie | Miller, Stephanie | Juran, John |
| Bissey, Donna | Hatley, Andrew | Genco, Raechel |
| Hiles, Jacob | Pert, Rachael | Macrae, Douglas |
| Wangler, Douglas | Winn, Dana | Seymour, Paul |
| Harrison, Bruce | Wickersham, Gary | Ferguson, Jamie |
| Bustle, Jessica | Schwemmer, Esther | Fontanez-Rodriguez, Samuel |
| Doyle, Danielle | Kelly, Kenneth | Bostic, Karegan |
| Bennett, Andrew | Straka, Brandon | Bostic, Willard Jr. |
| Mazzocco, Matthew | Sizer, Julia | McFadden, Tyrone |
| Rosa, Eliel | Blauser, William | Mileur, Aaron |
| Gallagher, Thomas | Barnard, Richard | Williams, Carrie |
| Vinson, Thomas | Witcher, Jeffrey | Rutledge, Meghan |
| Dillon, Brittiany | McAlanis, Edward | Saer, Lilith |
| Sanders, Jonathan | Lollis, James | Cantrell, Eric |
| Fitchett, Cindy | Schubert, Amy | Smith, Gary |
| Sweet, Douglas | Schubert, John | Kuecken, Deborah |
| Cordon, Sean | Orangias, Michael | Traugh, Christina |
| Wilkerson, John | Quick, Michael | Culbertson, Alan Scott |
| Jones, Caleb | Reda, Kenneth | Harrison, Jeremy |
| Brown, Terry | McCreary, Brian | Ramakrishn, Karthik |
| Wrigley, Andrew | Colbath, Paul | Connolly, Kim Marie |
| Parks, Jennifer | Lewis, Jacob | Pacheco, Angelo |
| Reimler, Nicholas | Lentz, Nicholes | |

The above list does not even include all the January 6 Capitol breach defendants for whom the Government sought a sentence of incarceration, but judges refused to impose incarceration:

| | | |
|---|---|---|
| Vinson, Lori | Cordon, Kevin | Edwards, Gary |
| Griffith, Jack | Abual-Ragheb, Rasha | Tutrow, Israel |
| Torrens, Eric | Nelson, Brandon | Kostolsky, Jackson |
| Gruppo, Leonard | Markofski, Abram | Rusyn, Michael |
| Ryan, Jennifer | Marquez, Felipe | Sells, Tanner |
| Stotts, Jordan | Mariotto, Anthony | Walden, Jon |

---

[10] *See*, *e.g.*, https://www.washingtonpost.com/dc-md-va/2023/03/29/us-attorneys-office-charges-declined-dc-police/; https://georgetowner.com/articles/2023/10/16/crime-report-congress-targets-soft-on-crime-d-c-local-reports/, last visited April 1, 2024. Even if the U.S. Attorney's Office actually papered a charge based on a resistance theory of assault on a police officer (which the D.C. Council is actually trying to remove from the statute), the U.S. Attorney's Office would have permitted Mr. Balhorn to be eligible for a Deferred Prosecution Agreement or a Deferred Sentencing Agreement. And, even if such diversion, which is routinely offered, was not offered, Mr. Balhorn would have almost certainly received a probationary sentence if convicted under the current sentencing practices and statistics in that Court for misdemeanor and felony dispositions.

[11] *See* Government's Sentencing Table of January 6 Capitol Defendants, dated February 12, 2024, https://www.justice.gov/usao-dc/media/1331746/dl?inline, last visited April 1, 2024.

14

| | | |
|---|---|---|
| Prado, Nicole | Ayres, Stephen | Bokoski, Matthew |
| Williams, Vic | Hentschel, Cara | Chiguer, Stefanie |
| Wiedrich, Jacob | Munn, Dawn | Cohen, Menachem |
| Stepakoff, Michael | Munn, Joshua | Temple, Cole Andrew |
| Wilson, Zachary | Munn, Kayli | Smith, Justin Michael |
| Wilson, Kelsey | Munn, Kristi | Greene, Michael |
| McAuliffe, Justin | Munn, Thomas | Hart, Timothy Allen |
| Williams, Andrew | Munger, Jeffrey | Gallman, Joei |
| Leffingwell, Mark | Rodean, Nicholas | Gallman, William |
| Sunstrum, Traci | Mels, James Allen | Isaacs, William |
| Gonzalez, Eduardo | Clark, Christy | Parker, Sandra |
| Strong, Kevin | Clark, Matthew | Parker, Bennie |
| Nalley, Verden | Spigelmyer, Paul | Machacek, Brennen |
| Carico, Michael | Uptmore, James | Schulz, Kenneth |
| Loftus, Kevin | Brooks, James | Etter, Jeffrey |
| Kelley, Kari | Yazdani-Isfehani, Abigail | Hellonen, Dodge |
| Martin, Zachary | Yazdani-Isfehani, Loruhamah | Llamas, Saul |
| Cudd, Jenny | Comeau, Jason | Messer, Walter |
| Jackson, Micajah | Evans III, Treniss | Siemers, Jordan |
| Ivey, Bryan | Castle, Trudy | Coomer, Micah |
| Burress, Gabriel | DiFrancesco, Kimberly | Abate, Joshua |
| Pettit, Madison | Wood, Matthew | Preller, Brian |
| Fee, Thomas | Wiersma, David | Yavoich, Andrew |
| Zlab, Joseph | Frankowski, Dawn | Dodge, Russell |
| Fox, Samuel | Buxton, Jonas | Krauss, David |
| Hardin, Michael | Billingsley, Steven | Krauss, Nicholas |
| O'Malley, Timothy | Gross, Juliano | Ardolino, Vincent |
| Rebegila, Mark | Council, Matthew | Cotton, William |
| Conover, Thomas | Johnson Jr, Thaddis | Weyer, Conlin |
| Krzywicki, Carla | Bond, Stacy Lee | Chang, Julio C |
| Kulas, Christian | Conlon, Paula | Modrell, Paul |
| Kulas, Mark | Witzemann, Shawn | Fatta, Renee |
| Von Bernewitz, Eric | Slaeker, Tyler | Rutledge, Macsen |
| Ballesteros, Robert | Montalvo, Matthew | Clark, Jacob |
| Peart, Willard | Gable, Levi | Moncada, Nicolas |
| Spain, Jr., Edward | Faulkner, Luke | Wilkerson, William |
| Chapman, Robert | Javid, Iraj | Tew, Tyler |
| Tagaris, Jody | Lanham, Melanie | Mooney-Rondon, Maryann |
| Sywak, William Jason | Gleffe, Marcos | Rondon, Rafael |
| Sywak, William Michael | Heathcote, Chad | Ward, Sean |
| Laurens, Jonathan | Manwaring, Susan | Ciampi Jr., Louis Michael |
| Cunningham, Christopher | Bustos, Alexis | Keller, Klete |
| Torre, Benjamin | Bustos, Bryan | Bartow, Travis |
| Suarez, Marissa | Myers, Rachel | Webb, Frederick |
| Todisco, Patricia | Grover, Logan | Andrulonis, Ronald |
| Persick, Kerry | Cramer, Country | Christensen, Holly |
| Buckler, Matthew | Gordon, Vaughn | Christensen, Scott |
| Cavanaugh, Andrew | Gerwatowski, Eric | Palm, Hunter |
| Ortiz, Christopher | Ambrose, Lawrence | Ball, David |
| Homer, Lisa | Tilley, Todd | Bargar, Jerod |
| Fracker, Jacob | Montoya, Samuel | Epps, James Ray |
| Thurlow, Steven | Weibling, Adam | Horn, Stephen |
| McNicoll, Lois Lynn | Cronin, Kevin | Keen, William |
| Youngers, Darrell | Massie, Kenneth | Hawkins, Jacob |
| Vollan, Cody | Hallon, Luis | Jaure, Yesenia |
| Carollo, Anthoy | Gould, John David | Matson, Israel Mark |
| Bratjan, Frank | Jones, Brian Raymond | Homol, Dillon |
| Ferreira, Leticia | King, Patrick John | Campanella, Cameron |
| Connor, Francis | Horvath, Ian | Lebrun, Matthew |
| Ferrigno, Antonio | Gerding, Christina | Chwiesiuk, Karol |
| Lunyk, Anton | Gerding, Jason | Chwiesiuk, Agnieszka |
| Vincent, Reva | Bokoski, Bradley | |

If Mr. Balhorn could not believe he was part of anything other than an insurrection, as this Court stated at sentencing, so would the three hundred other individuals who entered the U.S. Capitol that day, but yet did not receive sentences of incarceration.

As there is a substantial question (or "close call") as to the reasonableness of Mr. Balhorn's sentence, he respectfully asks this Court to allow him to prosecute his appeal, without having to serve his sentence in its entirety, which would remove his liberty interests and likely destroy his business and his employees' continued employment.

## CONCLUSION

For all these reasons, Mr. Balhorn respectfully requests that his motion for release pending appeal be granted.

Dated: April 2, 2024                                  Respectfully submitted,

/s/ Christopher Macchiaroli
Christopher Macchiaroli (D.C. Bar No. 491825)
Silverman, Thompson, Slutkin & White LLC
1750 K Street, NW, Suite 810
Washington, DC 20006
Telephone: (202) 539-2444
Facsimile: (410) 547-2432
Email: cmacchiaroli@silvermanthompson.com

*Counsel for Defendant Ronald Michael Balhorn*