UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>RONALD MICHAEL BALHORN,<br><br>*Defendant*. | Case No. 23-cr-114-2 (ACR) |

**MEMORANDUM AND ORDER**

Defendant Ronald M. Balhorn was convicted of various misdemeanors in connection with his participation in the January 6, 2021 insurrection. The Court sentenced him to 100 days of incarceration, 12 months of supervised release, and fines. Seeking to avoid serving the sentence, he asks the Court to stay his sentence pending appeal. Dkt. 84 (Mot.). He contends that his appeal raises a substantial question of law, namely, that his within-Guidelines sentence is not substantively reasonable. *Id.* at 7–16. Arguing that the sentence is reasonable, the Government opposes. Dkt. 88 (Opp.).[1] The Court agrees with the Government and DENIES Defendant's Motion.

**I. BACKGROUND**

Mr. Balhorn was convicted, following a bench trial, of three misdemeanors stemming from his conduct at the United States Capitol on January 6, 2021: entering and remaining in a restricted building or grounds, in violation of 18 U.S.C. § 1752(a)(1); disorderly and disruptive conduct in a restricted building or grounds, in violation of 18 U.S.C. § 1752(a)(2); and parading,

---

[1] The Court thanks the Government for voluntarily expediting its briefing.

1

demonstrating, or picketing in a Capitol building, in violation of 40 U.S.C. § 5104(e)(2)(G). Dkt. 78 (Judgment) at 1–2.  He was acquitted of civil disorder, in violation of 18 U.S.C. § 231(a)(3); disorderly conduct in a Capitol building, in violation of 40 U.S.C. § 5104(e)(2)(D); and the greater 18 U.S.C. § 1752(a)(1) and (2) charges requiring a deadly or dangerous weapon. Dkt. 73 (Oct. 18, 2023 Trial Tr.) at 213:22–214:2.

On February 21, 2024, the Court sentenced Mr. Balhorn to 100 days of incarceration and 12 months of supervised release.  Dkt. 78 at 3–4.  Additionally, the Court ordered Mr. Balhorn to pay a $60 special assessment, a $2,000 fine, and $500 in restitution.  *Id.* at 7.  The sentence fell within the Guidelines range of 0 to 6 months of incarceration and a $500 to $9,500 fine.  Dkt. 89 (Feb. 21, 2024 Sentencing Tr.) at 27:17–28:9.  Mr. Balhorn does not challenge the Court's calculation of the Guidelines range.  *See generally* Dkt. 84; *see also* Dkt. 89 at 24:4–8, 25:21–25, 26:15–27:1.  At sentencing, Mr. Balhorn agreed to surrender voluntarily for service of his sentence on April 30, 2024.  Dkt. 89 at 60:11–15; *see also* Dkt. 78 at 3.  He has appealed this sentence but has yet to file his appellate brief.  Dkt. 76 (Notice of Appeal).

## II.  ANALYSIS

A Court "shall order" release pending appeal if it finds (1) "by clear and convincing evidence" that the person does not pose a flight risk or danger to others, (2) "that the appeal is not for the purpose of delay," and (3) that the appeal "raises a substantial question of law or fact likely to result in . . . a sentence that does not include a term of imprisonment, or . . . a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process."  18 U.S.C. § 3143(b)(1).  A defendant bears the burden of proving that he meets the statutory prongs and, at this stage, the presumption shifts from one

of release to one of valid conviction. *United States v. Perholtz*, 836 F.2d 554, 556 (D.C. Cir. 1987) (per curiam).

The Court finds by clear and convincing evidence that Mr. Balhorn is "not likely to flee or pose a danger . . . if released." 18 U.S.C. § 3143(b)(1)(A). Indeed, the Court would not have permitted Mr. Balhorn to self-surrender unless he satisfied this requirement. *Id.* § 3143(a)(1). The Government does not contest this point. *See* Dkt. 88 at 3–7. And the Court need not decide whether Mr. Balhorn's appeal is for the purpose of delay because, as explained next, he does not raise a substantial question of law or fact likely to change his sentence.

The key issue is whether Mr. Balhorn's appeal raises a "substantial question," *i.e.*, "a close question or one that very well could be decided the other way." *Perholtz*, 836 F.2d at 555–56 (cleaned up). It does not. The question of law that Mr. Balhorn identifies—his sentence's substantive reasonableness—is patently insubstantial for at least six reasons.

*First,* Mr. Balhorn received a sentence of 100 days of incarceration which falls well-within the Guidelines range of 0 to 6 months. Dkt. 78 at 3; Dkt. 89 at 27:17–19. In this Circuit, "a sentence that is within the Guidelines range is entitled to a presumption of reasonableness on appeal." *United States v. Kaufman*, 791 F.3d 86, 89 (D.C. Cir. 2015). Not surprisingly then, Mr. Balhorn does not cite any case requiring release pending appeal pursuant to 18 U.S.C. § 3143(b)(1) on the grounds that a within-Guidelines sentence was substantively unreasonable.

Nor does Mr. Balhorn provide the Court any basis to break new ground. His Motion primarily rehashes arguments the Court already credited in calculating his sentence. He cites, for example, his status as a first-time offender and the fact that he did not damage property or act violently. *Compare* Dkt. 84 at 7–9 *with* Dkt. 89 at 45:19–21, 50:8–16. The Guidelines range and the Court's consideration of the 18 U.S.C. § 3553(a) factors squarely accounted for these

3

arguments. The Guidelines range included a two-point reduction for first-time offenders, and the Court applied the trespass Guideline—over the harsher Guideline for obstructing or impeding officers—to account for the nonviolent nature of Mr. Balhorn's offenses. Dkt. 89 at 20:9–14, 52:19–22

*Second,* Mr. Balhorn's argument that some other nonviolent first-time-offender January 6 defendants did not receive sentences of incarceration, Dkt. 84 at 10, 14–16, ignores his unique circumstances. To be sure, some such defendants received more lenient sentences than Mr. Balhorn did, but others, of course, received harsher sentences. *See* U.S. Dep't of Just., *Sentences Imposed in Cases Arising Out of The Events of January 6, 2021* (Apr. 15, 2024), https://www.justice.gov/usao-dc/media/1331746/dl?inline. Sentencing requires an individualized assessment, and a defendant's offenses of conviction and criminal history are just two of the factors courts consider. Courts must also weigh the sentencing factors set forth in Section 3553(a). Cookie-cutter sentences for every first-time-offender January 6 defendant convicted of nonviolent misdemeanors would ignore this holistic and individualized approach.

The Court, at sentencing, acknowledged the need to avoid unwarranted sentencing disparities while accounting for Mr. Balhorn's actions. Dkt. 89 at 32:6–33:3, 51:16–53:19. The Court highlighted that none of the January 6 defendants it had previously sentenced to probation faced off with police officers. *Id.* at 32:11–13. Not the case for Mr. Balhorn. Mr. Balhorn was face-to-face with police in riot gear who were attempting to quell the insurrection at two different locations. *Id.* at 52:7–14. At each interaction, Mr. Balhorn had a decision to make: leave as instructed or break the law by proceeding further to the Capitol. Each time he chose the latter, ultimately making it inside. The Court appropriately considered this conduct in

concluding that his actions, considered along with the other § 3553(a) factors, merited a prison sentence.

*Third*, unlike other January 6 defendants, Mr. Balhorn did not accept responsibility. This Circuit has long held that judges may "show leniency to defendants who demonstrate contrition and acceptance of responsibility for their crimes." *United States v. Jones*, 997 F.2d 1475, 1477 (D.C. Cir. 1993). "That some defendants pled guilty while others did not provides a perfectly valid basis for a sentencing disparity . . . and such disparity impose[s] no impermissible burden on [a defendant's] jury-trial right." *United States v. Lopesierra-Gutierrez*, 708 F.3d 193, 208 (D.C. Cir. 2013) (citing *Jones,* 997 F.2d at 1477–80).

Mr. Balhorn complains that the Government did not offer him a satisfactory plea deal. Dkt. 84 at 10. This argument is singularly unpersuasive. A defendant can accept responsibility without government plea offers or concessions.[2] Mr. Balhorn could, for example, have pled guilty to 40 U.S.C. § 5104(e)(2)(G) like his co-defendant or conceded the elements of 18 U.S.C. §§ 1752(a)(1) and (a)(2). *See* U.S.S.G. § 3E1.1, comment. (n.1) (listing appropriate considerations for acceptance of responsibility adjustment). He did not. Nor did he "[voluntarily] surrender to authorities promptly after commission of the offense; . . . [voluntarily] assist] authorities in the recovery of the fruits and instrumentalities of the offense"; or timely "[manifest] the acceptance of responsibility." *Id.* Instead, Mr. Balhorn waited until closing arguments to concede that he violated 40 U.S.C. § 5104(e)(2)(G). Dkt. 73 at 174:22–175:7.

---

[2] Mr. Balhorn received a final offense level of four. Dkt. 89 at 27:17–19. Because offense levels four and two both result in a recommendation of 0 to 6 months of incarceration, the two-level reduction for acceptance of responsibility would not have changed the applicable Guidelines range. U.S.S.G. § 5(A) (Sentencing Table).

*Fourth,* Mr. Balhorn argues that, by considering the conduct of January 6 participants generally, the Court improperly attributed others' conduct to him. Dkt. 84 at 7–8. It did not. Instead, the Court punished him "for being part of an insurrection" and because he "entered the U.S. Capitol after ignoring two different sites where police officers in riot gear were trying to disperse the crowd." Dkt. 89 at 42:14–18. True, he did not himself attack or trample any police officer. But his participation as part of the riot made it possible for police to be attacked and trampled by others. *Id.* at 42:4–8. Thus, "any idea that [the Court] punished [him] for what other people did or for [others'] beliefs . . . is in tension with the facts and in tension with reality." *Id.* at 42:19–21.

*Fifth*, the fact that Mr. Balhorn owns a business that may lose revenue and employees does not make his sentence unreasonable. *See* Dkt. 84 at 12–13. At sentencing, the Court expressly considered that Mr. Balhorn is a business owner. Dkt. 89 at 50:9–10. And the Court is certainly sympathetic to the stress his imprisonment places on the business and his employees. But economic loss is an expected consequence of incarceration for almost all defendants. The Court did what it could to minimize this disruption by giving Mr. Balhorn 69 days to self-surrender so he could prepare his business for his absence. *Id.* at 60:11–15; *see also* Dkt. 78 at 3. In the future, Mr. Balhorn can avoid further disruption to his business by not participating in illegal riots or otherwise breaking the law.

*Sixth*, the Court could reasonably have imposed a higher sentence. The Court did not rely on Mr. Balhorn's acquitted conduct. Dkt. 89 at 7:9–12; *see also United States v. Khatallah*, 41 F.4th 608, 647 (D.C. Cir. 2022); *id.* at 651 (Millet, J., concurring). It did not sentence based on Mr. Balhorn's violations of his pre-trial release conditions. Dkt. 89 at 42:22–43:8. Nor did it

credit that Mr. Balhorn "was in a more superior role than" his much younger co-defendant. *Id.* at 43:9–14. *If* the sentence can be criticized at all, it would be as too lenient, not too harsh.

### III.   CONCLUSION

For the reasons set forth above, it is hereby **ORDERED** that Mr. Balhorn's Motion for Release Pending Appeal, Dkt. 84, is **DENIED**.

**SO ORDERED.**  This is a final appealable order.  *See* Fed. R. App. P. 4(a).

DATE: April 17, 2024

_____
ANA C. REYES
United States District Judge